**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:19-cv-00160-MR**
**(CRIMINAL CASE NO. 1:17-cr-00143-MR-WCM-1)**

| | | |
|---|---|---|
| **MITCHUM SCOTT TURPIN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

_____

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to

Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] and

Petitioner's letter, which the Court construes as a Motion to Amend [Doc. 3].

## I.    BACKGROUND

Petitioner was charged in a Bill of Indictment along with two co-

defendants with robbery within the boundaries of the Eastern Band of

Cherokee Indians reservation (Count One), and kidnapping (Count Two).

[Criminal Case No. 1:17-cr-00143-MR-WCM-1 ("CR"), CR Doc. 21].

Petitioner pled guilty to Count One in exchange for the Government's

dismissal of the remaining count. He signed a written Plea Agreement in

which he admitted to being guilty as charged in Count One and

acknowledged: his minimum and maximum sentencing exposure; that the sentence had not yet been determined and an advisory guideline sentence would be calculated; that the sentence, up to the statutory maximum, would be determined at the Court's sole discretion; and that he would not be able to withdraw the plea as a result of the sentence imposed. [CR Doc. 35 at 1-2]. In the Plea Agreement, the parties agreed to jointly recommend: that the base offense level should be 20; that the reasonably foreseeable loss amount was less than $20,000; that a dangerous weapon was brandished; that a person was physically restrained to facilitate commission of the offense; that Petitioner knew or should have known that the victim was a vulnerable victim; that the entry of the plea was timely; that if the Court determined from Petitioner's criminal history that he qualified as a career offender or an armed career criminal, such provisions may be used in determining the sentence; and that the parties would not seek any other enhancements or reductions to the offense level. [Id. at 2-3]. The Plea Agreement set forth the rights Petitioner was waiving by pleading guilty, including the right to a jury trial with the assistance of counsel, the right to confront and cross-examine witnesses, and the right not to be compelled to incriminate himself. [Id. at 4-5]. Petitioner expressly agreed to waive his

appellate and post-conviction rights except for claims of ineffective assistance of counsel and prosecutorial misconduct. [Id. at 5].

A Rule 11 hearing was held before Magistrate Judge Howell on December 22, 2017. [CR Doc. 84]. Petitioner stated under oath that he had taken some medications within 48 hours but that they were not affecting his mental faculties at all, that his mind was clear, and that he understood he was there to enter a guilty plea that could not be later withdrawn. [Id. at 5]. Petitioner stated that he and counsel had reviewed the Indictment and the Plea Agreement together. [Id. at 2-9]. Judge Howell read aloud the statutes to which Petitioner was pleading guilty, explained the elements of the offense, and advised Petitioner of his potential sentencing exposure. [Id. at 2-9]. Petitioner stated that he understood the charges against him, including the maximum and minimum penalties and the elements of the offense. [Id. at 9]. Petitioner agreed that counsel had discussed the sentencing guidelines with him and that he understood the Court could impose any sentence within the statutory limits that may be lower or higher than the guidelines range. [Id. at 10-12]. He stated that he understood that the plea would be binding even if the sentence were more severe than he expected. [Id.]. Petitioner confirmed that by pleading guilty, he was waiving the right to plead not guilty, the right to have a speedy trial before a jury with the

assistance of counsel, the right to summon witnesses to testify on his behalf, the right to confront witnesses against him, and the right to receive the presumption of innocence. [Id. at 12-13]. Petitioner agreed that he was, in fact, guilty of Count One and that he had committed the acts alleged in the Indictment. [Id. at 13]. Petitioner further stated that his plea was freely and voluntarily entered with a full understanding of what he was doing, that he was not promised anything other than the promises contained in the Plea Agreement, and that he was not threatened or in any way forced to enter the plea against his wishes. [Id. at 17-21]. Petitioner acknowledged that he knowingly and willingly accepted the Plea Agreement's limitation on the right to appeal and file post-conviction proceedings. [Id. at 19-20]. Petitioner confirmed that he had had ample time to discuss possible defenses with counsel and was entirely satisfied with counsel's services. [Id.].

In support of Petitioner's guilty plea, the parties submitted a written Factual Basis that sets forth the following information with regards to Petitioner:

> On October 29, 2017, Kasey Keffer, Tilmon Fortner and MITCHUM TURPIN met at TURPIN'S residence …. Forntner, Keffer, and TURPIN discussed being short of money. Keffer suggested that she knew where they could find someone who had money. Keffer told them that several days before she had gone to an old man's apartment in Cherokee and observed he had a substantial amount of cash on hand, and told them in which apartment he lived. Prior to departing, Keffer and Fortner

observed TURPIN with a black pistol, later determined to be a pellet gun.

At approximately 5:30 PM that same day, Keffer drove Fortner and TURPIN to the Soco Creek Apartments… which is located within the boundary of the Eastern Band of Cherokee Indians Reservation, and in Jackson County. Keffer stopped and TURPIN followed a few seconds later by Forner, got out of the vehicle. Fortner followed TURPIN to the door of Building A, apartment 102.

TURPIN gained entry to apartment 102, followed by Fortner. TURPIN was conversing with K.C., an enrolled member of the Eastern Band of Cherokee Indians…. TURPIN produced a pistol and pointed it at K.C. and ordered him to the back bedroom.

TURPIN, aided by Fortner, took $762 in U.S. currency from K.C. at apparent gunpoint. TURPIN then ordered K.C. into the closet and told him to remain there and closed the closet door. TURPIN and Fortner returned to the vehicle and Keffer drove them from the scene. They were subsequently apprehended by Maggie Valley Police and Cherokee Indian Police.

[CR Doc. 36 at 1-2].

Petitioner certified that the written Factual Basis was true and accurate and that, if the matter had proceeded to trial, the Government would have been able to prove each of the statements in the Factual Basis beyond a reasonable doubt.  [CR Doc. 40].

The presentence investigation report ("PSR") identified Petitioner's base offense level as 20. [CR Doc. 56 at ¶ 12]. Three levels were added because a dangerous weapon was brandished or possessed; two levels

were added because a person was physically restrained; and two levels were added because Petitioner knew or should have known that the victim of the offense was a vulnerable victim. [Id. at ¶¶ 13-15]. This resulted in an adjusted offense level subtotal of 27. [Id. at ¶ 18]. However, because the Petitioner qualified as a career offender,[1] the adjusted offense level became 29. [Id. at ¶ 19]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 26. [Id. at ¶¶ 20-22].

The PSR calculated Petitioner's criminal history category to be VI. [Id. at ¶ 34]. The resulting advisory guidelines range was 120 to 150 months' imprisonment followed by between one and three years of supervised release. [Id. at ¶¶ 68, 71].

Petitioner stated at the sentencing hearing on April 19, 2018 that his statements at the Rule 11 hearing were true and correct and that he would answer the questions the same if asked again. [CR Doc. 83 at 4]. The Court sentenced Petitioner to 120 months' imprisonment followed by three years of supervised release. The Judgment was entered April 30, 2018. [CR Doc. 66]. Petitioner did not appeal.

---

[1] The PSR's criminal history section identified Petitioner's North Carolina conviction for felony assault with deadly weapon with intent to kill and Petitioner's federal convictions for carjacking, possession of a firearm during and in relation to a crime of violence, and bank robbery as career offender predicates. [Id. at ¶¶ 28, 30].

Petitioner filed the instant *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255 on May 13, 2019.  Liberally construing his arguments, he argues that: (1) his guilty plea was involuntary because he was coerced into pleading by the lack of medical care he was receiving in pretrial detention; (2) his conversations with counsel at the courthouse could be overheard in violation of the Sixth Amendment; (3) the predicate offenses for his § 924(c) charge are not violent felonies; and (4) counsel was ineffective for failing to raise the foregoing and failed to remove herself from representing him even though she was operating under a conflict of interest. Petitioner argues that he did not raise these claims on direct appeal because his plea agreement contained an appellate waiver, he was "deathly ill," and counsel refused to help him.  [Doc. 1 at 18].

In a letter dated July 1, 2019 and docketed July 5, 2019, Petitioner argues that his offense was not violent, that he was shot by a vigilante as he fled from a bank robbery whereas he only possessed a bb gun and did not hurt anyone, and that his prior convictions do not qualify as § 924(c) predicates.  These arguments appear to be in reference to Petitioner's 1995 convictions for bank robbery, § 924(c), and carjacking.  It was during this particular bank robbery that Petitioner was shot by a bank customer while Petitioner was attempting to flee the scene.  He asks for an FBI investigation

into the circumstances of his shooting and for the appointment of counsel. [Doc. 3].

The Government has filed a Response arguing Petitioner's claims of ineffective assistance of counsel are meritless and that the other claims are waived, procedurally defaulted, and meritless. The Government further argues that the Motion to Amend should be denied because any new claims are untimely and that his civil rights claims are not cognizable in a § 2255 proceeding.  [Doc. 4].

In his Reply, Petitioner claims that he does not understand the Government's Response but that he "can fe[e]l the wrongness of it."  [Doc. 5 at 1].  Petitioner further argues that he knows that he is not a career offender, that counsel tainted the entire case, and that his current conviction was not a violent crime.

## II.    SSTANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a

plea offer. <u>See generally</u> <u>United States v. Witherspoon</u>, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  <u>See</u> <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

### A.    Motion to Amend

At the outset, the Court will address Petitioner's letter, which the Court construes as a motion to amend.  In it, Petitioner elaborates on his § 2255 claims and appears to seek relief in the nature of a civil action against the person who prevented Petitioner's escape after his 1995 bank robbery.  He further requests the appointment of counsel.  [Doc. 5].

The Rules Governing Section 2255 Proceedings do not specify a procedure for amending motions to vacate. Therefore, courts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a § 2255 motion to vacate. <u>See</u> <u>United States v. Pittman</u>, 209 F.3d 314, 316-17 (4th Cir. 2000); <u>see</u> <u>also</u> Rule 12, Rules Governing Section 2255 Proceedings; Fed. R. Civ. P. 15(a).  Rule 15(a)(2) states that the Court "should freely give leave when justice so requires."  <u>Id.</u> The Court therefore in its discretion will

allow the amendment insofar as Petitioner's elaborates on the claims stated in his original Motion to Vacate.

As for Petitioner's attempt to add a claim against the person who prevented Petitioner's fleeing the scene after his 1995 bank robbery, Petitioner raises this new claim for the first time in his motion to amend.  It is, however, untimely because he filed his motion to amend more than a year after his conviction became final.   See 28 U.S.C. § 2555(f). Moreover, Petitioner appears to be attempting to pursue a civil rights action against a private citizen, rather than a challenge to his sentence.[2]   Accordingly, this claim also is not cognizable under § 2255.

As for Petitioner's request for the appointment of counsel, such request is denied.  Petitioner has no constitutional right to the appointment of counsel to file post-conviction motions.  Lawrence v. Florida, 549 U.S. 327, 336-37 (2007) (citing Coleman v. Thompson, 501 U.S. 722, 756-57 (1991)); Rouse v. Lee, 339 F.3d 238, 250 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004) (citing Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987) (no constitutional right to counsel beyond first appeal of right)).   The Court may, in some circumstances, appoint counsel to represent a habeas petitioner when the

---

[2] In addition, Petitioner is raising this issue for the first time more than 23 years after the events giving rise to the allegations.

interests of justice so require and the petitioner is financially unable to obtain representation. See 18 U.S.C. § 3006A(a)(2)(B). In the instant case, however, Petitioner has failed to demonstrate that the interests of justice warrant the appointment of counsel. See United States v. Riley, 21 F. App'x 139, 141-42 (4th Cir. 2001).

## B.  Motion to Vacate

### 1.  Involuntary Plea Claim

In his first claim, Petitioner contends that his guilty plea was not knowingly and voluntarily entered.

In his written plea agreement, Petitioner expressly agreed to waive his appellate and post-conviction rights except for claims of ineffective assistance of counsel and prosecutorial misconduct. He acknowledged at his Rule 11 hearing that he knowingly and willingly accepted this limitation on his right to appeal. A knowing and voluntary waiver of the right to pursue post-conviction relief is enforceable. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Accordingly, Petitioner is barred from asserting this claim by the waiver provision in his plea agreement.

Additionally, this claim is procedurally barred. A claim that could have been pursued on direct appeal, but was not, is procedurally barred unless the petitioner shows both cause for the default and actual prejudice or

demonstrates that he is actually innocent of the offense.  See Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008).  Here, Petitioner has shown neither cause nor prejudice resulting from the failure to challenge on direct appeal the alleged denial of medical treatment.  Further, he does not contend that he is actually innocent of the federal robbery offense.  Accordingly, this claim is procedurally barred.

Petitioner's claim also fails on the merits.  Before accepting a guilty plea, a district court must conduct a plea colloquy in which it informs the defendant of, and determines if the defendant comprehends, the nature of the charge to which he is pleading guilty, the maximum possible penalty he faces, any mandatory minimum penalty, and the rights he is relinquishing by pleading guilty. Fed. R. Crim. P. 11(b)(1); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). A court must also ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement.  Fed. R. Crim. P. 11(b)(2), (3).

Here, the Court complied with Rule 11 by confirming that Petitioner understood the charges, his sentencing exposure, and the rights he was relinquishing by pleading guilty. Petitioner's present contention that his plea

was involuntary due to inadequate treatment for his medical condition is refuted by the Plea Agreement, the Factual Basis, and Petitioner's statements in open court. Petitioner was advised of the relevant statutes and elements of the offense in open court; he agreed that he understood the charges and discussed them with counsel; and he acknowledged the rights he was waiving by pleading guilty. He acknowledged that he had taken some medication but that his mind was clear, he was there to plead guilty, and he understood that the plea could not be later withdrawn. [CR Doc. 84 at 5]. He confirmed at the sentencing hearing that his Rule 11 statements were true and that he would answer the questions the same way. [CR Doc. 83 at 4]. His present self-serving and unsupported claims to the contrary are therefore rejected. See Lemaster, 403 F.3d at 221-22 ("in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

For all these reasons, Petitioner's claim challenging the voluntariness of his guilty plea must be denied.

## 2.    Attorney-Client Privilege Claim

Second, Petitioner contends that his conversations with counsel at the courthouse could be overheard in violation of right to counsel under the Sixth Amendment.

This claim is waived by Petitioner's knowing and voluntary guilty plea. See United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) ("a guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges"); see also Lemaster, 403 F.3d at 200 (post-conviction waivers are enforceable). This claim is also procedurally defaulted from § 2255 review because Petitioner failed to raise it on direct appeal, and Petitioner has failed to demonstrate cause and prejudice or actual innocence.  See Section B.1., *supra.*

This claim would fail on the merits, however, even if it were not waived and procedurally barred.  The Sixth Amendment right to counsel protects the right to effective assistance of counsel and thus necessarily, the "privacy of communication with counsel." United States v. Brugman, 655 F.2d 540, 546 (4th Cir. 1981). There is no *per se* rule that the Sixth Amendment is violated whenever conversations with counsel are overheard.  Id.; see Weatherford v. Bursey, 429 U.S. 545, 551 (1977) (the Court "cannot agree" that case law requires or suggests that such a *per se* rule exists).  Factors that a court

must consider when evaluating whether the government has violated the Sixth Amendment by invading the attorney-client relationship are: (1) whether the government's intrusion was intentional "in order to garner confidential, privileged information," or whether it was inadvertent; (2) whether the government directly or indirectly obtained evidence through the intrusion that it later used at trial; (3) whether the information gleaned by the government from the intrusion was otherwise used to the "substantial detriment" of the defendant; and (4) whether the government learned the details of the defendant's "trial preparation."  <u>Brugman</u>, 655 F.2d at 546.  It is well-settled in the Fourth Circuit that a defendant must put forward "some showing of prejudice" to succeed on a claim for a Sixth Amendment violation based on an invasion of the attorney-client relationship. <u>United States v. Chavez</u>, 902 F.2d 259, 266 (4th Cir. 1990).

Petitioner alleges that his co-defendant overheard a discussion that Petitioner had with his counsel and that Petitioner, in turn, overheard one of co-defendant's discussions with his counsel.  Petitioner makes the conclusory assertion that the Government "is aware or should be aware" of these conversations with counsel, which were supposed to be private. [Doc. 1 at 9].  Petitioner does not allege, however, that any actual government intrusion occurred, that the government gleaned any information from

overhearing any discussion whatsoever, or that Petitioner suffered any detriment or was prejudiced in any way. Petitioner therefore has failed to demonstrate that any Sixth Amendment violation occurred. Accordingly, this claim will be denied and dismissed.

### 3. Sentencing Claims

Next, Petitioner contends that he lacks the predicate offenses to support either a § 924(c) conviction or the career offender sentencing enhancement.

At the outset, the Court notes that Petitioner was not convicted of a violation of § 924(c) in this matter. With respect to Petitioner's challenge to his career offender designation this claim was waived by Petitioner's written plea agreement in which Petitioner expressly waived his post-conviction rights. This claim is also procedurally defaulted from § 2255 review because Petitioner failed to raise any sentencing claim on direct appeal. Id. Moreover, a challenge to the career offender enhancement is not cognizable on § 2255 review because this is merely a claim of misapplication of the sentencing guidelines that does not give rise to a constitutional issue. See Mikalajunas, 186 F.3d at 495-96 ("misapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice.").

Even if Petitioner were not barred for all these reasons from asserting this claim, it would fail on the merits. Petitioner contends that his convictions did not qualify as career offender predicates because they were more than 15 years old. This claim is conclusively refuted by the PSR, which shows that Petitioner was not released from prison on these matters until March 2, 2009. [See CR Doc. 56 at 10]. Petitioner committed the instant offense on October 29, 2017, so these predicate convictions fall well within the 15-year window. See U.S.S.G. § 4A1.2(e). As such, Petitioner was properly classified as a career offender. For all these reasons, Petitioner's sentencing claims are without merit.

### 4. Ineffective Assistance of Counsel Claims

Finally, Petitioner contends that counsel was ineffective for failing to adequately represent him with regards to the foregoing claims and for operating under an actual conflict of interest.

First, Petitioner has failed to demonstrate ineffective assistance of counsel for failing to address the claims discussed above. Counsel cannot be deemed ineffective for failing to raise these claims because they are meritless. Petitioner is thus unable to demonstrate that counsel was deficient for failing to raise those meritless claims or that counsel's failure to raise the claims prejudiced him in any way. Knowles v. Mirzayance, 556 U.S. 111,

123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

Second, Petitioner has failed to demonstrate that counsel operated under an actual conflict of interest. To establish ineffective assistance of counsel based on a conflict of interest, a defendant who raised no objection at trial must demonstrate that counsel operated under an "actual conflict of interest" this conflict "adversely affected his lawyer's performance." United States v. Dehlinger, 740 F.3d 315, 322 (4th Cir. 2014) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)). If the petitioner satisfies this showing, "prejudice is presumed and [he] need not demonstrate a reasonable probability that, but for counsel's conflicted representation, the outcome of the proceeding would have been different." Woodfolk v. Maynard, 857 F.3d 531, 553 (4th Cir. 2017) (citing United States v. Nicholson, 611 F.3d 191, 195 (4th Cir. 2010)).

An actual conflict exists when a petitioner shows that his counsel "actively represented conflicting interests." Sullivan, 446 U.S. at 350. "A defendant has established an adverse effect if he proves that his attorney took action on behalf of one client that was necessarily adverse to the defense of another or failed to take action on behalf of one because it would

adversely affect another." <u>Mickens v. Taylor</u>, 240 F.3d 348, 360 (4th Cir. 2001) (*en banc*). A showing of adverse effect requires the petitioner to: (1) "identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued;" (2) show that this strategy "was objectively reasonable under the facts of the case known to the attorney at the time," and (3) show "that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." <u>Dehlinger</u>, 740 F.3d at 322 (quoting <u>Mickens</u>, 240 F.3d at 361). Because an actual conflict of interest requires not only a theoretically divided loyalty, but also a conflict that actually affected counsel's performance, the actual conflict and adverse effect inquiries are often intertwined. <u>Jones v. Polk</u>, 401 F.3d 257, 267 (4th Cir. 2005).

Here, Petitioner contends that counsel previously represented a person against whom Petitioner was the key witness and that, when Petitioner tried to discuss the issue with counsel, counsel said they could not discuss it anymore. Petitioner, however, has not demonstrated the existence of an actual conflict of interest or any adverse effect on his criminal representation arising from such alleged conflict. According to Petitioner, the alleged conflict resulted from counsel's representation of another individual in a prior case. Petitioner does not allege that any conflicting representation was concurrent with Petitioner's case. Nor does Petitioner demonstrate that

there was any actual effect on counsel's performance. His claim therefore fails on the merits and will be denied.

### 5.    Civil Rights Claims

Petitioner also appears to allege numerous violations of his constitutional rights by the person who prevented his flight after committing the 1995 bank robbery.  As noted previously, such claims are not cognizable in a § 2255 action. <u>See</u> <u>generally</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973) (habeas and a civil rights suit pursuant to 42 U.S.C. § 1983 are mutually exclusive).  Therefore, Petitioner's civil rights claims are dismissed without prejudice. To the extent that Petitioner seeks to pursue such claims, they must be filed in a separate civil action.[3]

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's Motion to Amend is granted in part and denied in part, and the Motion to Vacate is denied and dismissed.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

---

[3] The Court expresses no opinion about the merit or procedural viability of such an action.

debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

1.    The Motion to Amend [Doc. 3] is **GRANTED IN PART** and **DENIED IN PART**.

2.    The Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1], as amended, is **DENIED** and **DISMISSED WITH PREJUDICE**.

3.    Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: March 4, 2020

Martin Reidinger
United States District Judge